**TEXAS INTERNATIONAL AIRLINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

**No. 24459.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1971.

Decided Dec. 28, 1971.

---

Mr. Emory T. Nunneley, Washington, D. C., with whom Mr. Frederick S. Hird, Jr., Washington, D. C., was on the brief, for petitioner.

Mr. Warren L. Sharfman, Associate General Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. R. Tenney Johnson, General Counsel, O. D. Ozment, Deputy General Counsel, Robert L. Toomey and Allen R. Frischkorn, Attorneys, Civil Aeronautics Board, were on the brief, for respondent. Mr. Howard E. Shapiro, Attorney, Department of Justice, entered an appearance for respondent.

Before BAZELON, Chief Judge, LEVENTHAL, Circuit Judge, and GOURLEY,* Senior District Judge for the Western District of Pennsylvania.

LEVENTHAL, Circuit Judge:

Petitioner Texas International Airlines, Inc. seeks review of an order of the Civil Aeronautics Board which required it to refund $296,792 of the subsidy payment which it received from the Government for 1966. The CAB orders established a class rate system providing for the payment of subsidy to local service carriers based on a formula, and subject to certain profit-sharing provisions. The year 1966 is governed by class rate III–A.[1] The pertinent provisions required a carrier to refund some portion of the subsidy received when its profits after income taxes (including the subsidy) provided a rate of return beyond specified levels.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1964).

1. Investigation of the Local Service Class Subsidy Rate, Orders E–23697, May 18, 1966, and E–23850, June 23, 1966

In the year 1966 petitioner, like the local service carriers generally, had a profitable year, and under the regulations of the Board was required to refund part of the subsidy paid in 1966. The determination of the amount of the subsidy required the Board to review the results of 1966. The Board made its final determination as to the petitioner in 1970.

By that time petitioner had incurred losses during 1968 and 1969, as had local service carriers generally. Under the tax laws petitioner was able to carry back its tax losses for those years to the year 1966, and to obtain a refund of the taxes paid for 1966. That refund operated to reduce its "actual taxes" for 1966, to increase its 1966 profits after taxes, and to increase the amount available for profit-sharing between the carrier and the Government. The Government ordered the petitioner to comply with the terms of its rate formula.

■ Petitioner does not contest the basic formula. It does make a claim that it had not filed its 1969 tax return as of its "final determination" date of May 21, 1970. We agree with the Government and with Ozark Air Lines, Inc. v. CAB, 441 F.2d 892 (8th Cir. 1971), that a carrier cannot escap its refund obligation by the circumstance that its actual filing for 1969 was made at a later date, later than the date that the return was required to be filed.

A more serious problem is raised by petitioner's claim of invalidity due to differences in treatment given to the different local service carriers by the Board. It does appear that the Board's regulation turns on the tax status of the carriers as of the date of the Board's "final determination" and that each carrier has its own final determination date, a date that depends on the order in which the matters were processed.[2]

■ Viewing the matter broadly we agree with the Ozark opinion that the Board was within its discretion in setting up a schedule for making final subsidy determinations of the different carriers, and that it was not arbitrary in calculating the "actual tax" of the carrier for the year in question as known on the final determination date. In sum, the cases were closed on the basis of the facts known at the time of closing, even though the cases of other carriers were not yet determined and their disposition might be influenced by the facts emerging prior to the date of their final determination. In approving this use of different dates for different airlines we take into account that petitioner was not in competition with any other local service airline.

■ An extra difficulty is imparted to the case by petitioner's notation that in the case of Frontier Airlines, the clarification made as of its final determination of January 24, 1969, did not take into account its tax losses for 1968. The Government responds that under the regulation the "actual tax" policy is applied on the basis of returns filed, and

---

2. Petitioner states, without contradiction, that the Board closed out 1966 subsidy for the various local service carriers either by issuing an order claiming a refund, or by a notification of a subsidy deficiency, on the following dates:

| Carrier | Date | CAB Order |
|---|---|---|
| North Central Airlines, Inc. | January 15, 1969 | 69–1–62 |
| Frontier Airlines, Inc. | January 24, 1969 | 69–1–99 |
| Southern Airways, Inc. | March 20, 1969 | 69–3–75 |
| Mohawk Airlines, Inc. | October 2, 1969 | Deficiency Letter |
| Texas International Airlines, Inc. | May 21, 1970 | 70–5–108 |
| Ozark Air Lines, Inc. | May 21, 1970 | 70–5–107 |
| Allegheny Airlines, Inc. | June 1, 1970 | 70–6–9 |
| Hughes Air West | July 15, 1970 | 70–7–73 70–7–74 |
| Piedmont Aviation, Inc. | Not yet settled | |

that as of January, 1969, the Frontier tax return for 1968, was not yet due to be filed. We are not entirely comfortable with this response, reflecting what is at least a question arising in our minds why a Government official meting out subsidy should enter into final closing in January, 1969, when he is aware in fact of the conditions for 1968 and that they will require a tax return in a few months which will give the carrier a refund for 1966 (due to the carry back of 1968 losses). In another context we might well question the breadth or administration of a Government program giving such latitude to its fiscal officers. However, the difficulty in the case at bar is that the petitioner is not entitled to its subsidy even if we assume, for discussion, that Frontier's subsidy should have been reduced. Assuming that the Government made a mistake as to Frontier in the application of the regulation, the law does not require the Government to perpetuate the mistake.

 Where an agency changes its standards or policy, as it may, there may be a requirement that the agency articulate the fact of change and underlying reasons. Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841, 852 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). However, what is involved here is, at most, a mistake in the application of a continuing policy. There is no claim of a deliberate refusal to accord to petitioner a treatment generally accorded to others, or a pattern of arbitrary discrimination.[3] Finally we take into account that this is a subsidy program, for while that does not give Government officers carte blanche to do as they will, it is not immaterial.[4]

Although we are not entirely comfortable with the situation laid before us, we conclude that the petitioner has not demonstrated invalidity in the order that was brought before us to review.

Affirmed.

---

3. Compare City of Chicago v. FPC, 128 U.S.App.D.C. 107, 121–122, 385 F.2d 629, 643–644 (1967), cert. denied, Public Service Comm. of Wis. v. F.P.C., 390 U.S. 945, 88 S.Ct. 1028, 19 L.Ed.2d 1133 (1968).

4. Trans World Airlines, Inc. v. CAB, 128 U.S.App.D.C. 126, 148, 385 F.2d 648, 670 (1967), cert. denied, 390 U.S. 944, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968); Virgo Corp. v. Paiewonsky, 384 F.2d 569 (3d Cir. 1967), cert. denied, 390 U.S. 1041, 88 S.Ct. 1634, 20 L.Ed.2d 303, rehearing denied, 392 U.S. 917, 88 S.Ct. 2053, 20 L.Ed.2d 1379 (1968).