**ALMAY, INC., et al., Plaintiffs,**

v.

**Caspar W. WEINBERGER et al., Defendants.**

**Civ. A. No. 75–1135.**

United States District Court, District of Columbia.

June 30, 1976.

---

William R. Pendergast, c/o McMurray & Pendergast, Washington, D. C., for plaintiffs.

John R. Dugan, Asst. U. S. Atty., Washington D. C., Richard A. Merrill (Chief Counsel), Terry Coleman, Food & Drug Administration, Rockville, Md., for defendants.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

The plaintiffs in this case, Almay, Inc., and Clinique Laboratories, Inc., are manufacturers of various cosmetic products. They have brought this action under 5 U.S.C. § 706 to set aside a rule promulgated by the Commissioner of the Food and Drug Administration (hereafter "Commissioner") on grounds that the rule is arbitrary and capricious. Although there was originally some doubt, it is now clear that the administrative record is complete in relevant part and this case is now before the Court on cross-motions for summary judgment.

The rule in question here was promulgated under the government's authority to eliminate the misleading labeling of cosmetics.[1] By 21 C.F.R. § 2.120(a)(I) (1975), the Commissioner has been delegated the power under 21 U.S.C. § 371(a) to issue substantive rules and regulations to achieve that end. See, e. g., *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 696–98 (2d Cir. 1975), *cert. denied*, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975).

In general, the regulation being challenged here, Regulation 700.100 of the Food and Drug Administration, limits the use on cosmetic labels of the term "hypoallergenic" and of phrases such as "allergy tested" and "dermatologist tested" which convey "the same meaning" as that term. More specifically, it demands that cosmetic manufacturers who use such terms: (1) accompany the word or phrase with the explanation "less likely to cause adverse reactions than some competing products" and (2) conduct certain scientific studies to demonstrate that the product for which the claim is made is in fact less likely to cause a reaction than a significant number of competitive products. 21 C.F.R. § 701.100, 40 Fed. Reg. 24450–51 (June 6, 1975).

The plaintiffs originally cited a number of reasons under 5 U.S.C. § 706 for setting the rule aside in whole or in part. They now have apparently settled in their motion for summary judgment on grounds that the rule violates § 706(2)(A) in that it is "arbitrary and capricious."[2]

First plaintiffs argue that it is arbitrary and capricious in the regulation's requirement of the specific test mechanism that manufacturers must use. Plaintiffs contend that the FDA should have established a test whereby each cosmetic product would be measured against an absolute or objective standard to determine whether that particular product could use the term "hypoallergenic" or some similar term on its label. Under such an objective test as many as all or as few as none of the products in a particular market might qualify to utilize these terms. But the Commissioner chose a comparative test instead. Under the regulation, as promulgated, a manufacturer must test his product against other products that together make up ten percent of the market in that product and must show that his product is significantly less likely to cause an adverse reaction than the other ten percent. The plaintiffs claim that requiring such testing for each individual product is economically unfeasible, impossi-

---

1. This authority comes from the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, specifically §§ 331(b), 362(a) and 371(a):

   § 331. Prohibited acts
   The following acts and the causing thereof are prohibited:

   \* \* \* \* \* \*

   (b) The adulteration or misbranding of any food, drug, device or cosmetic in interstate commerce.

   \* \* \* \* \* \*

   § 362. Misbranded cosmetics
   A cosmetic shall be deemed to be misbranded—
   (a) If its labeling is false or misleading in any particular.

\* \* \* \* \* \*

   § 371. Regulations and hearings—Authority to promulgate regulations
   (a) The authority to promulgate regulations for the efficient enforcement of this chapter, . . . is vested in the Secretary.

2. Under 5 U.S.C. § 706(2)(A), the reviewing court is given the power to:

   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

ble to regulate, and that it has no scientific support on the record.

In their second attack upon the regulation, the plaintiffs allege that it is arbitrary and capricious in that the rule has included such terms as "allergy tested" and "dermatologist tested" as "similar terms" to "hypoallergenic" and demanding that, before product labels can bear these terms, the products must be tested as required by the regulations. In support of this ruling, the Commissioner claims that a significant portion of the public is likely to infer from these terms, if unexplained, that the cosmetic will cause fewer adverse reactions than a product not so labeled. Thus, these and similar terms cause the same problem as the term "hypoallergenic" and should also be included under the rule. Plaintiffs, on the other hand, claim that the Commissioner had no scientific basis for finding that any significant portion of the public does, in fact, draw this inference and that, absent this basis, he should not have included these terms in the rule.

*Findings of Fact and Conclusions of Law*

In reviewing an agency action under 5 U.S.C. § 706(2)(A) to determine whether it was arbitrary and capricious, the courts have consistently viewed their duty as a "narrow one" in which the court must consider whether the agency action or decision was based upon a consideration of the relevant factors and whether there has been a clear error in judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Nader v. Sawhill,* 514 F.2d 1064, 1067 (Em. App.1975). Administrative action may be regarded as arbitrary and capricious and set aside by the court only where it is not supportable on any rational basis, *Carlisle Paper Box Co. v. N.L.R.B.,* 398 F.2d 1, 6 (3rd Cir. 1968), or where the court is of the opinion that the action was clearly wrong. *Hughes Air Corp. v. Civil Aeronautics Board,* 482 F.2d 143, 146 (9th Cir. 1973).

Here the Court is of the opinion that the Commissioner gave good faith consideration to the plaintiffs' arguments and that he had good reason for rejecting them.

The decision of the Commissioner to use a comparative test mechanism rather than an objective one resulted quite logically from his decision to define "hypoallergenic" as "less likely to cause adverse reactions than some competing products." 21 C.F.R. § 701.100(a), (e)(6), 40 Fed.Reg. 24450–51 (June 6, 1975). The Commissioner had first determined that consumers were choosing cosmetics based at least in part on the presence of the term "hypoallergenic" on the label and that the term had no consistently understood meaning. The Commissioner was supported in this by a survey of women and teenagers in California which was conducted under the supervision of the Federal Trade Commission. The results showed that, when given a multiple choice of meanings, 57 percent of the women and 45 percent of the teenagers defined "hypoallergenic" as "less likely to cause irritation than regular cosmetics." 23 percent of the women and 22 percent of the teenagers chose "completely free of any ingredients causing skin irritation/allergy." On the other hand, when given no list of choices, 65 percent of the persons tested defined the word in such noncomparative terms as "not harmful to skin" and "safe for use." Administrative record at 576–77. This study clearly showed that consumers were obviously confused by the use of the term "hypoallergenic."

The Commissioner was therefore confronted with the problem of resolving this confusion. One possibility suggested to him by the Committee on Cutaneous Health and Cosmetics of the American Medical Association was to ban the use of the term altogether. 39 Fed.Reg. 7288 (Feb. 25, 1974); Administrative record at 1593–95. The Commissioner considered this option and concluded that use of the term "hypoallergenic" should not be banned because it could, in some instances, convey valuable information to consumers. 40 Fed.Reg. 24442 (June 6, 1975). Plaintiffs have no quarrel with this decision. However, they suggested to the Commissioner that the

term be defined as "very unlikely to cause adverse reactions," arguing that such a definition would better facilitate economic, efficient and accurate testing by providing an objective standard chosen by the Commissioner against which a manufacturer could measure a particular cosmetic's risk of producing an adverse reaction. And in support of this argument plaintiffs compiled an impressive list of dermatologists who supported defining "hypoallergenic" objectively. The Commissioner considered this possibility. 40 Fed.Reg. 24444 (June 6, 1975). However, he concluded that a definition which conveyed to the consumer that a particular cosmetic was safer than some other competitive products was a superior one.

This decision had the support of a number of relevant factors in the Administrative record. First was that a significantly greater number of consumers believed that "hypoallergenic" meant "safer than competitors" rather than "very safe." Second was the fact that a comparative definition would be more helpful to consumers trying to decide what cosmetics to buy. An objective definition would not convey much meaningful information since, as the AMA's Committee on Cutaneous Health and Cosmetics noted, adverse reactions to cosmetic products are relatively rare today overall and that there is little distinction in risk of reaction among established brands. Administrative record at 1594. Therefore, under an objective definition, if one cosmetic in a particular market could qualify to use the word "hypoallergenic," then likely all or nearly all could qualify and the usefulness of the term to consumers would disappear. Cf. 40 Fed.Reg. 24443, 24445 (June 6, 1975). A third factor was that if a manufacturer wished to convey to the consumer that a particular cosmetic was objectively safe, the rule would not prevent him from doing so. The manufacturer simply would not be able to use the word "hypoallergenic" or similar words to this end. 40 Fed.Reg. 24444 (June 6, 1975). This being the case, manufacturers would not be substantially disadvantaged by the decision to define "hypoallergenic" in comparative terms.

■ Given these three factors, the Commissioner's decision to choose a comparative definition was based upon a consideration of the relevant factors and was reasonable.

■ Having determined that the comparative definition was the proper one, the Commissioner was then left with prescribing the mechanism by which a particular product could be tested to determine whether it could use the term "hypoallergenic" in accordance with the comparative definition. The Commissioner chose a directly comparative test mechanism, in which a manufacturer would test his product against a number of competitors, and suggested this type of test in the proposed rule. 39 Fed.Reg. 7292 (Feb. 25, 1974). The Commissioner thereafter considered the alternative objective tests that various commenters proposed as substitutes for the proposed rule test. He determined that no objective test had been suggested which would come sufficiently close to assuring that only those cosmetics which were "less likely to produce adverse reactions than a significant number of their competitors" would be permitted to use the term "hypoallergenic" on their labels. 40 Fed.Reg. 24444 (June 6, 1975). It is this Court's opinion, based on the foregoing, that the Commissioner's decision to retain the comparative test in the regulation was a rational and reasonable one. Plaintiffs' argument for setting this portion of the rule aside is without merit.

■ The second argument advanced by the plaintiffs is that the regulation is arbitrary and capricious in including within its requirements such terms as "allergy tested" and "dermatologist tested" as terms similar to "hypoallergenic." The Commissioner took the position that these terms definitely convey to consumers that a particular cosmetic is comparatively less likely to cause adverse reactions. 40 Fed.Reg. 24450 (June 6, 1975). This conclusion of the Commissioner is supported by rational inference from the FTC survey and is nowhere refuted in the record. The Commissioner further found that the danger of confusing the

consumer by the use of these terms could be eliminated by explaining the term in such a manner so as to make it objective. For example, "allergy tested" could be expanded with great ease to state "This product has been allergy tested and produced a rate of adverse reaction of ten per million consumers," making it clearly an objective rather than a comparative statement. Based upon these considerations and others, the Commissioner decided that the terms "allergy tested" and "dermatologist tested" should be subject to the requirements of the rule. This decision is, in this Court's view, reasonable and plaintiffs' argument for setting aside this portion of the regulation must also fail.

Based on all of the foregoing, the Court is of the opinion that the Commissioner has presented a rational basis for his actions which are being challenged here. This being the case, the Court finds that the regulations being challenged are not arbitrary and capricious and that they can not be set aside by the Court. See *National Association of Food Chains, Inc. et al. v. Interstate Commerce Commission et al.*, 535 F.2d 1308 (D.C. Cir. 1976).

It is therefore this 30th day of June, 1976,

ORDERED that defendants' motion for summary judgment be, and the same hereby is, granted; and it is

FURTHER ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, denied; and it is

FURTHER ORDERED that judgment be entered for the defendants.