# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 10, 2024          Decided July 9, 2024

No. 21-1272

DUKE ENERGY PROGRESS, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

EDGECOMBE SOLAR LLC,
INTERVENOR

———

Consolidated with 22-1072, 22-1284, 22-1327

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Misha Tseytlin* argued the cause for petitioner. With her on the briefs were *Christopher R. Jones*, *Antonia M. Douglas*, and *Kevin M. LeRoy.*

*Jennifer T. Harrod* and *Robert B. Josey* were on the brief for *amici curiae* North Carolina Utilities Commission and the Public Staff - North Carolina Utilities Commission in support of petitioner. *Louis S. Watson, Jr.* entered an appearance.

*Beth G. Pacella*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Tyler O'Connor* argued the cause for intervenor. With him on the brief were *Holly Rachel Smith* and *Larry F. Eisenstat*. *Amanda S. Berman* entered an appearance.

Before: WILKINS and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*. Petitioner, Duke Energy Progress, LLC ("Duke Energy"), seeks review of two orders by the Federal Energy Regulatory Commission: (1) rejecting its agreement with an energy generation company, American Beech Solar, LLC, and (2) accepting its agreement with another energy generation company, Edgecombe Solar LLC, which Duke Energy filed unsigned and under protest. Under both contracts, the generators would pay Duke Energy to perform network upgrades enabling them to connect new generation facilities to the electric grid. But the first agreement does not require Duke Energy to reimburse the cost of those upgrades, while the second does. Because we hold that FERC's orders were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), we deny the petitions for review.

**I.**

**A**.

Most electricity in the eastern United States is transmitted on a single grid. That grid is subdivided into regions, each administered by a nonprofit "System Operator" that monitors the flow of electricity to ensure, among other things, an adequate supply of electricity and grid stability. Within each region, sections of the grid's physical infrastructure are owned by "Grid Operators," typically public utilities, that connect electricity generation facilities to the grid and transmit the electricity. The generation facilities connected to a Grid Operator's infrastructure may be owned by the Grid Operator itself or by third parties.

The transmission of electricity in interstate commerce is governed by the Federal Power Act, 16 U.S.C. § 824(b), which requires the Federal Energy Regulatory Commission (the "FERC") to ensure that the price of electricity is just, reasonable, and not unduly discriminatory or preferential. 16 U.S.C. § 824d(a), (b). Among the transactions that FERC regulates is the connection of a new generation facility to the physical infrastructure owned by a Grid Operator. FERC promulgated Order 2003 (along with Orders 2003-A, 2003-B, and 2003-C) to establish "standard procedures and a standard agreement for interconnecting [large] generators" to jurisdictional public utilities' transmission systems. Standardization of Generator Interconnection Agreements & Procedures, Order No. 2003, 104 FERC ¶ 61,103 at PP 1, 7 (2003) ("Order 2003"), *order on reh'g*, Order No. 2003-A, 106 FERC ¶ 61,220 (2004) ("Order 2003-A"), *order on reh'g*, Order No. 2003-B, 109 FERC ¶ 61,287 (2004) ("Order 2003-B"), *order on reh'g*, Order No. 2003-C, 111 FERC ¶ 61,401

(2005) ("Order 2003-C"), *aff'd sub nom*; *see also Ameren Servs. Co. v. FERC*, 880 F.3d 571, 574 (D.C. Cir. 2018).

Under these standard procedures, a generator must request FERC's approval to connect a new generation facility to the grid. *Ameren Servs. Co.*, 880 F.3d at 572. The System Operator for the relevant grid section will then determine if any Grid Operator needs to upgrade its infrastructure to handle the increased flow of electricity from the new generation facility. *Id.* Importantly, upgrades may be needed on a section of the grid to which the generator will directly connect and on other more distant sections of the grid. *See* Order No. 2003 at n.32. Order 2003 uses different terminology to refer to the owners of directly connected sections ("Transmission Providers") and the owners of other sections ("Affected System Operators").

Most of the relevant procedures in Order 2003 relate to the obligations between generators and Transmission Providers. For example, the standard procedures include a standard contract—the *pro forma* Long Term Interconnection Agreement ("*pro forma* Agreement")—that applies between a generator and the Transmission Provider to whose system it proposes to directly connect. Order 2003, Appendix C. If upgrades are needed, Order 2003 and the *pro forma* Agreement require the generator to pay initial upgrade costs and the Transmission Provider to then reimburse the generator in installments. Order 2003, Appendix C § 11.4.1.

This dispute is about whether that reimbursement requirement also applies when connecting a new generation facility makes network upgrades by an Affected System Operator necessary.

When subject to Order 2003's standard procedures, a Grid Operator (whether a Transmission Provider or Affected System Operator) can only avoid following such procedures if FERC

approves a request for a deviation. *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 552 (D.C. Cir. 2022). To obtain a deviation, a Grid Operator must show that the standard procedures would unduly affect its existing customers by submitting a transmission rate filing that "explain[s] the facts of the case and the assumptions on which its calculation is based and provide[s] evidentiary support." Order No. 2003-B at P 56.

**B.**

The key players in this dispute are an Affected System Operator, Duke Energy, and two energy generation companies, American Beech Solar, LLC ("American Beech") and Edgecombe Solar LLC ("Edgecombe"). Duke Energy owns a section of the grid within the Mid-Atlantic region. American Beech and Edgecombe proposed to connect new large solar generating facilities onto a neighboring section of the grid, which would require $20-30 million in network upgrades to Duke Energy's system. In the two FERC proceedings before us, the parties dispute whether Duke Energy must reimburse the generators for the cost of those network upgrades.

The first proceeding involves American Beech's proposed interconnection. Duke Energy and American Beech executed an Affected System Operating Agreement under which American Beech would not seek reimbursement for the network upgrade costs (the "American Beech Agreement"). [**JA4-82**]. After Duke Energy submitted the agreement to FERC for approval, American Beech submitted comments to FERC urging it to require reimbursement anyway. *Duke Energy Progress*, Comments of American Beech Solar, Docket No. ER21-1955 [**JA95-96**]. American Beech argued that the agreement was not just and reasonable because Duke Energy had threatened to delay construction of the upgrades,

preventing American Beech from connecting to the grid, unless American Beech agreed to forego reimbursement. *Id*. Edgecombe moved to intervene in support of American Beech's argument that FERC's rules require Duke Energy to pay reimbursement. *See Duke Energy Progress*, Motion to Intervene and Comments of Edgecombe Solar Energy LLC, Docket No. ER21-1955 **[JA83]**; *Duke Energy Progress*, Motion for Leave to Answer and Answer of Edgecombe Solar Energy LLC, Docket No. ER21-1955 **[JA246]**.

FERC agreed and rejected the American Beech Agreement. *See Duke Energy Progress*, Order Rejecting Affected System Operator Agreement, Docket No. ER21-1955-002, 177 FERC ¶ 61,001 (Oct. 1, 2021) ("October 1st Order") **[JA196]**. FERC held that reimbursement was required under Order 2003. *Id.* at P 3. **[JA197].** Responding to Duke Energy's argument that it had not always required reimbursement in the past, FERC explained that many of the prior contracts that Duke Energy identified were distinguishable because they involved, among other things, costs that were directly assignable to a generator under Duke Energy's Tariff. *Id.* at P 37 & n.62 **[JA210]**. FERC explained that even if it had erroneously not required reimbursement in a few prior cases, it was still bound to follow the requirements of Order 2003. FERC also rejected Duke Energy's arguments that it was entitled to a deviation, explaining that Duke Energy failed to support its generalized statement of harm with a sufficient factual record or show why the circumstances made it unjust for Duke's transmission customers to pay the costs of network upgrades. *Id.* at P 34 **[JA208-09]**. FERC directed Duke Energy to submit a new agreement that provided for reimbursement payments. *Id.* at P 41 **[JA211]** ("Finally, we are concerned with the delays that American Beech will experience as a result of [Duke Energy]'s actions with respect to this agreement. . . . Thus, we urge [Duke Energy] to file a

revised [agreement] and commence construction of the required network upgrades expeditiously.").

In the second proceeding, American Beech had abandoned its proposed connection, so Edgecombe stepped in to request that Duke Energy install the same upgrades to accommodate Edgecombe's proposed facility. Duke Energy submitted to FERC a new agreement with Edgecombe providing for the required reimbursements (the "Edgecombe Agreement"). **[JA275].** But Duke Energy submitted the agreement unsigned and under protest that it should not be required to pay reimbursements. **[JA275].**

FERC approved the Edgecombe Agreement. *See Duke Energy Progress*, Docket No. ER22-1807, 180 FERC ¶ 61,005 (July 5, 2022); *Duke Energy Progress*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. ER22-1807-001, 180 FERC ¶ 62,114 (Sept. 6, 2022); *Duke Energy Progress*, Order Addressing Arguments Raised on Rehearing, Docket No. ER22-1807-001, 181 FERC ¶ 61,197 (Dec. 13, 2022) ("December 13th Order"). In its orders approving the Edgecombe Agreement, FERC explained that "the arguments that Duke raises for the first time in its Request for Rehearing were previously raised in the separate American Beech proceedings in Docket No. ER21-1955. Consequently, the Commission has already explained why Duke's arguments are without merit, and we adopt the reasoning in the October 2021 Order and April 2022 Rehearing Order in this order." December 13th Order at P 29. **[JA428].**

Duke Energy seeks review of FERC's orders in both proceedings.

**II.**

Before reaching the merits, we reject FERC's two threshold objections that: (1) Duke Energy's petitions for review as to the American Beech Agreement are moot and (2) Duke Energy failed to preserve its arguments as to the Edgecombe Agreement.

**A.**

A controversy is not moot if the court's decision would "affect the rights of the litigants." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (citations omitted). Here, our decision in the American Beech proceeding will affect Duke Energy's right to enter into an Affected System Operator Agreement without reimbursement. Duke Energy explains that it filed the Edgecombe Agreement pursuant to FERC's instructions in the American Beech proceeding; it filed the agreement unsigned and subject to its objection that reimbursement should not be required. FERC has not walked back its instruction for Duke Energy to enter into a new Affected System Operator Agreement, and it continues to maintain that Duke Energy's new Affected System Operator Agreement must provide for reimbursement. If Duke Energy were to prevail on the merits, and the Court were to reverse or vacate FERC's order rejecting the American Beech Agreement, Duke Energy could withdraw the Edgecombe Agreement. Reply Br. 29. And it could refuse to enter into another Affected System Operator Agreement that provided for reimbursement. Thus, Duke Energy's petition for review of the American Beech Order is not moot.

**B.**

Duke Energy has also adequately preserved its objections to the Edgecombe Agreement. Under FERC's precedent, it

"will reject new arguments on rehearing that could have been made originally." *La. Pub. Serv. Comm'n v. Entergy Corp.*, 172 FERC ¶ 61,056, at P 38 (2020). Because Duke Energy did not raise its objection to the reimbursement requirement in the Edgecombe proceeding until its motion for rehearing, FERC argues that those arguments have been forfeited. But the precedent on which FERC relies is inapt.

This case is not one in which new arguments or evidence presented on rehearing raise concerns of "fairness and due process." *See, e.g.*, *Omaha Pub. Power Dist.*, 164 FERC ¶ 61,238, at P 11 (2018). The American Beech proceeding arose directly from the Edgecombe proceeding, and Duke Energy made clear in its Edgecombe filings that it continued to press its earlier objections. When FERC rejected Duke Energy's agreement with American Beech, it directed Duke Energy to file a new agreement that provided for reimbursement. *See* October 1st Order at P 41 **[JA211]** ("urg[ing]" Duke Energy "to file a revised [Agreement] and commence construction of the required network upgrades expeditiously."). In response, Duke Energy submitted the unsigned Edgecombe contract under protest. In the letter accompanying its Edgecombe filing, Duke Energy raised its objection to reimbursement: "[Duke Energy] has not executed the [Edgecombe Agreement] because it objects to the inclusion of the reimbursement provisions for the costs of network upgrades." *Duke Energy Progress*, Unexecuted Affected System Operating Agreement with Edgecombe Solar LLC, Transmittal Letter, Docket No. ER22-1807-000 (May 6, 2022). **[JA275].** In the letter, Duke Energy also referenced FERC's decision on reimbursement in the American Beech proceedings. *Id.* Moreover, Edgecombe was already aware of Duke Energy's arguments because it filed motions responding to those arguments in the American Beech proceedings. *See Duke Energy Progress*, LLC, Motion to

Intervene and Comments of Edgecombe Solar Energy LLC, Docket No. ER21-1955-000 (June 10, 2021) **[JA83]**.

Finally, FERC's argument that the two proceedings should be treated separately because they address different filings and were assigned different FERC docket numbers is undermined by the fact that FERC itself treated the proceedings as connected.  In FERC's order approving the Edgecombe Agreement, it relied on its orders rejecting the American Beech Agreement, with no additional case-specific analysis, explaining that: "All of the arguments that Duke raises for the first time in its Request for Rehearing were previously raised in the separate American Beech proceedings . . . the Commission has already explained why Duke's arguments are without merit, and we adopt the reasoning in [the American Beech orders]."  December 13th Order at P 29.  **[JA428]**.

## III.

Turning now to the merits, we review FERC's orders under the Administrative Procedure Act and will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also LSP Transmission Holdings II v. FERC*, 45 F.4th 979, 998 (D.C. Cir. 2022).  We hold that FERC's orders did not violate this standard.

## A.

FERC was not arbitrary and capricious in holding that Order No. 2003 requires Affected System Operators  to reimburse generators for network upgrade costs to the Affected System Operator's system.

As previously mentioned, *supra* 4, most provisions of Order 2003 and the *pro forma* Agreement relate to interactions between a generator (like American Beech or Edgecombe) and Transmission Provider (with which the generator proposes to directly connect). But two relevant provisions of Order 2003's preamble address Affected System Operators (like Duke Energy) directly.

First, Order 2003 requires that: "Transmission credits are to be paid to the [generator] when upgrades to an Affected System are constructed and the [generator] has paid for them." Order 2003 at P 29.

Second, Order 2003 addresses commenters' concerns that transactions between a generator and an Affected System Operator are not covered by the *pro forma* Agreement. *Id.* at P 736. When connecting a new generation facility will require upgrades to an Affected System, Order 2003 states "[the *pro forma* Agreement] . . . should . . . expressly allow for refunds to be provided to [a generator] when such Network Upgrades must be constructed and the [generator] is required to pay for them." *Id.* at P 738. In such a situation, Order 2003 makes the *pro forma* Agreement "applicable to all jurisdictional Affected System Operators on whose systems Network Upgrades are constructed to accommodate [a generator's] Interconnection Request." *Id.* "[T]his means that . . . an Affected System Operator may require the [generator] to pay for . . . Network Upgrades," but "upon commencement of commercial operation, any Affected System Operator that has received payments from the [generator] must begin to refund to the [generator] the costs of Network Upgrades that the [generator] has paid." *Id.* And this refund requirement applies "without regard to whether the [generator] has contracted for delivery service on the Affected System Operator's Transmission System." *Id.* The reimbursement requirement is reiterated in

the following paragraph, which explains that the generator and Affected System Operator "must enter into an agreement" and that the agreement "must specify the terms governing . . . the payment of refunds." Order 2003 at P 739. FERC, therefore, amended Article 11.4.1 of the *pro forma* Agreement to require that a generator "shall be entitled to a cash refund, equal to the total amount paid to the Transmission Provider and the Affected System Operator, if any, for the Network Upgrades." Order 2003, Appendix C, § 11.4.1.

Together, FERC claims, these provisions require a generator and an Affected System Operator to enter into an agreement addressing network upgrades to the Affected System. That agreement—whether or not it is otherwise modeled on the *pro forma* Agreement—must contain the reimbursement requirement contained in Article 11.4.1. Resp. Br. at 35-36. We defer to FERC's interpretation of its own ambiguous regulation, so long as the interpretation is reasonable and "the character and context of the agency interpretation entitles it to controlling weight." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-16 (2019).

Here, the text is not at odds with FERC's interpretation. Order 2003's preamble states that the reimbursement requirement applies to agreements between generators and Affected System Operators. Language in the preamble of a rule is a valid "source of evidence concerning contemporaneous agency intent," *Wyoming Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999), such that it can "establish rights and obligations or create binding legal consequences," *Nat. Res. Def. Council v. EPA*, 571 F.3d 1245, 1252 n.2 (D.C. Cir. 2009) (cleaned up). *See also Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1223 (D.C. Cir. 1996) (explaining that preamble language has

independent legal effect when an agency intends to bind either itself or regulated parties).

FERC's reading that the reimbursement requirement applies to Affected System Operators also finds support in Order 2003-C, which states that "both the Transmission Provider and an Affected System Operator must provide the 20-year lump-sum reimbursement to refund any remaining balance, even if no transmission service was taken."  Order 2003-C at P 13.  Indeed, Duke Energy has several Affected System Operator Agreements providing for reimbursement.  *See, e.g.*, *Duke Energy Progress*, Docket No. ER17-567 (Jan. 13, 2017); *see also* Motion to Dismiss and Answer of Duke Energy Progress, LLC, Duke Energy Carolinas, LLC, and Duke Energy Florida, LLC, Docket No. EL21-73-000, at 19 (June 1, 2021) ("The Duke Companies do not dispute that— absent mutual agreement to address Affected System Network Upgrade costs in an alternative manner approved by the Commission—Order No. 2003 requires Affected System Operators to reimburse [generators] for Affected System Network Upgrade costs they pay upfront.").

Duke Energy's response that it is not subject to the reimbursement requirement because it is not a party to a *pro forma* Agreement with either Edgecombe or American Beech is beside the point.  Duke Energy points to language in Order 2003 that "the owner or operator of an Affected System is not bound by the provisions of the . . . [*pro forma* Agreement]" when it is a third-party non-signatory to that standard agreement, because "a contract cannot bind a third party that is not a signatory to it."  Order No. 2003, 104 FERC ¶ 61,103 at PP 117, 121.  Duke Energy argues that only the parties to a contract can be bound by its terms, so Duke Energy  can only be required to reimburse generators with which it has already entered into a *pro forma* Agreement.  **[Pet. Br. 49-50].**  But

Duke Energy's obligation to reimburse the generators does not arise from the *pro forma* Agreement. Rather, Order 2003 requires Duke Energy to include in its Affected System Operator Agreements a reimbursement requirement akin to the one in the *pro forma* Agreement. Order 2003 at P 738 (making the reimbursement requirement "applicable to all jurisdictional Affected System Operators").

Moreover, the regulatory language that Duke Energy highlights addresses a different requirement—for the coordination of interconnection studies and the timing of network upgrades—not reimbursement. 104 FERC ¶ 61,103 at P 121. After noting that the coordination requirement in the *pro forma* Agreement would not otherwise apply to upgrades on Affected Systems, FERC made it applicable. *Id.* Nothing about this provision undermines FERC's argument that Order 2003 also makes the reimbursement provision applicable to Affected System Operators. If anything, this provision provides another example of Order 2003 imposing requirements found in the *pro forma* Agreement to transactions that the *pro forma* Agreement itself does not cover.

Finally, it bears noting that Affected System Operators enter into Affected System Operator Agreements with generators, rather than the *pro forma* Agreement. So, if Duke Energy were correct that it need only reimburse generators with which it has executed a *pro forma* Agreement, the reimbursement requirement would essentially never apply to Affected System Operators—in direct contradiction of Order 2003. Order 2003 at PP 738-39. We reject this reading of Order 2003.

## B.

FERC also reasonably rejected Duke Energy's request for a deviation from the reimbursement requirement. Although

agency action is arbitrary and capricious when the agency has "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), Duke Energy does not identify any important aspect of its deviation request that FERC failed to consider.

Duke Energy argues—for the first time in its petition to this Court—that a deviation is warranted because its customers will not receive any corresponding benefit for the $13 million in network upgrade costs of reimbursement. **[Pet. Br. 60-61].** FERC was not arbitrary and capricious in deciding that a deviation was not justified. To begin, Duke Energy did not argue before FERC that its customers would receive no benefit from the upgrades, so the agency cannot be faulted for failing to consider that argument. Moreover, "the integrated transmission grid is a cohesive network, and thus completed upgrades generally benefit all transmission customers." *ESI Energy v. FERC*, 892 F.3d 321, 325 (D.C. Cir. 2018). There is a rebuttable presumption that a Grid Operator's customers will be benefitted by upgrades to its system: "[T]he Transmission Provider bears the full burden of showing that any such proposal is just and reasonable and not unduly discriminatory or preferential, and is appropriate under the circumstances." Order 2003-B at P 56. Duke Energy fails to raise any specific facts or analysis showing why, unlike in a typical case of network upgrades, the upgrades in this case would not provide any benefit to its customers.

FERC also considered and reasonably rejected the American Beech Agreement as a basis for excusing Duke Energy from the reimbursement requirement. FERC explained that "American Beech had to choose between signing an agreement that assigned costs in contravention of Order No. 2003-C or accepting another year of delay, a delay that has

challenged American Beech's business model." October 1st Order at P 41 **[JA211]**. Duke Energy's power to block American Beech from entering the market was a reasonable basis for FERC to conclude that the American Beech Agreement was poor evidence that a deviation was justified.

## C.

FERC's orders in this case also did not run afoul of *Baltimore Gas*. *See Baltimore Gas & Elec. Co. v. FERC*, 954 F.3d 279 (D.C. Cir. 2020) (holding that FERC cannot treat similarly situated utilities differently without a reasonable justification, even in uncontested or unreasoned orders). Although Duke Energy points to several cases in which FERC approved contracts without reimbursement, FERC adequately differentiated some of those cases and admitted error in others. FERC's explanation for why its prior decisions violated Order 2003 and why Order 2003 required reimbursement in this case satisfied *Baltimore Gas*' reasonable justification requirement.

FERC distinguished several of the cases that Duke Energy cites in which reimbursement was not required. The two service agreements (Nos. 258 and 269) at issue in *Duke Energy Fla.*, Docket No. ER20-2419 (Sept. 2, 2020), for instance, involved system protection facilities, the costs of which were directly assignable to [the generator] without reimbursement under Duke Energy's FERC-approved tariff. October 1st Order at n.62 **[JA210]**. And *Mid-American Energy Co.*, Docket No. ER09-1654 (Oct. 22, 2009) and *Midwest Independent Transmission System Operator, Inc.*, 120 FERC ¶ 61,066 (2007) involved circumstances in which the Commission had approved generally applicable deviations regarding network upgrade costs. October 1st Order at n.62 **[JA210]**.

FERC then conceded that some of its prior precedent, for example, *Midwest ISO*, 120 FERC ¶ 61,066, was not entirely consistent with its decision here. **[FERC Br. 10.]** But it explained that the requirements of Order 2003 must govern its decision. October 1st Order at P 37. **[JA210]**. FERC clarified its understanding of Order 2003's requirements that reimbursement is required unless a Transmission Provider or Affected System Operator has (1) demonstrated compliance with a Commission-approved generally applicable deviation from that requirement; or (2) justified a case-specific deviation in the circumstances presented regarding the affected system operating agreement at issue. And it advised the Court that it will "always follow that precedent going forward." Oral Argument at 49:53. Once an agency has acknowledged that some of its prior cases were wrongly decided, this Court's precedent does not require the agency to endlessly repeat its error for the sake of consistency. *See Chem-Haulers, Inc. v. ICC*, 565 F.2d 728, 730 (D.C. Cir. 1977) ("The mere fact that the [agency] may have nodded on one occasion does not entitle a litigant to a repetition of its blunder . . ."); *Tex. Int'l Airlines v. Civil Aeronautics Bd.*, 458 F.2d 782, 785 (D.C. Cir. 1971) ("Assuming that the Government made a mistake . . . in the application of the regulation, the law does not require the Government to perpetuate the mistake."). FERC adequately acknowledged that its prior orders were inconsistent with its regulations and explained that Order 2003 requires reimbursement, thereby satisfying *Baltimore Gas*.

*****

For the foregoing reasons, we deny the petitions for review.

*So ordered.*