**Franklin J. RENO, Petitioner,**

v.

**NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation Administration, Respondents.**

No. 93–70275.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 6, 1994.*

Decided Jan. 25, 1995.

34(a) and Ninth Circuit Rule 34–4.

Edward R. Collins, Harris, Reedhead & Welbaum, San Diego, CA, for petitioner.

Susan S. Caron, Office of the Chief Counsel, FAA, Washington, DC, for respondents.

Before: D.W. NELSON, NORRIS, and BOGGS,** Circuit Judges.

D.W. NELSON, Circuit Judge:

Franklin J. Reno ("Reno") petitions for judicial review from a final order of the National Transportation Safety Board ("NTSB"), suspending his commercial pilot certificate for 10 days. Reno failed to secure the proper endorsements on his student pilot designation.

** The Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by

certificate and logbook, in violation of Federal Aviation Regulations ("F.A.R."), 14 C.F.R. §§ 61.87(d) and 61.93(c)(2).

We have jurisdiction over this appeal pursuant to 49 U.S.C. app. § 1486(a). For the reasons that follow, we deny Reno's petition for judicial review and affirm the NTSB's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 1988 Franklin J. Reno made an unauthorized intrusion into the San Diego terminal control area. Federal Aviation Administration ("FAA") safety inspector Jennifer Resnik ("Resnik") investigated the unauthorized intrusion. During her investigation, Resnik examined Reno's student pilot certificate and logbook. She concluded that between April 29, 1988 and August 19, 1988, Reno made nine solo flights in a Cessna 152 aircraft for which he did not have the proper instructor endorsements on his student pilot certificate. After further investigation, she also determined that Reno made two additional solo flights on August 6 and August 8, 1988, without having an authorized instructor endorse his pilot logbook within the 90 days preceding flight and that he made 2 solo cross-country flights without logbook endorsements indicating that his instructor had reviewed his pre-flight preparation.

Resnik concluded that Reno's failure to acquire the proper endorsements on his student pilot certificate and logbook violated 14 C.F.R. §§ 61.87(d) and 61.93(c)(2).

On January 23, 1989, the FAA Administrator ("Administrator") suspended Reno's commercial pilot certificate for 20 days.[1] Reno then timely appealed the suspension to the NTSB.

On appeal, the Administrative Law Judge ("ALJ") affirmed the Administrator's finding that Reno had violated 14 C.F.R. §§ 61.87(d) and 61.93(c)(2). However, having determined that Reno was competent and qualified to make the unauthorized flights and

therefore that he did not actually compromise aviation safety, the ALJ decided that a 10–day suspension of Reno's commercial pilot certificate would serve as an adequate sanction and as a deterrent for others similarly situated.

Reno appealed the ALJ's decision to the NTSB. The NTSB subsequently denied Reno's appeal and affirmed the 10–day suspension of his commercial pilot certificate. On January 15, 1993, the NTSB denied Reno's petition for reconsideration. Pursuant to Section 609 of the Federal Aviation Act, 49 U.S.C. app. § 1429(a), Reno petitioned this court for judicial review of the NTSB's order and denial of reconsideration. He later requested a stay of sanction pending disposition of the matter in this court. The NTSB granted the stay on February 12, 1993.

### STANDARD OF REVIEW

In reviewing the action of an administrative agency, the reviewing court shall set aside and hold unlawful any agency finding it determines to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A); *Hughes Air Corp. v. C.A.B.*, 482 F.2d 143 (9th Cir.1973). Purely legal issues are reviewable *de novo*. *Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514, 1517 (9th Cir.1986) (citing *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

### DISCUSSION

### I. ARBITRARY OR CAPRICIOUS

Reno first contends that the NTSB erred in suspending his commercial pilot license because its interpretation of the relevant language in 49 U.S.C. app. § 1429(a) was arbitrary and capricious. We disagree.

---

1. At the time of the infractions, Reno possessed a student pilot certificate. He subsequently obtained both his private pilot certificate and his commercial pilot certificate. If the Administrator had suspended only Reno's student pilot certificate, this would allow Reno to continue to exercise the privileges that accompany certificates of a higher degree, i.e. his commercial pilot certificate. Thus, the net effect would have been no sanction at all.

Section 1429(a) empowers the Administrator of the FAA to issue orders suspending aviation certificates "[i]f, as a result of any reinspection or reexamination ... he determines that safety in air commerce or air transportation and the public interest requires" a suspension. Reno argues that the ALJ erred in affirming the FAA's decision to suspend his commercial pilot certificate, because the ALJ acknowledged that safety in aviation was not actually compromised by Reno's failure to secure the endorsements required by 14 C.F.R. §§ 61.87(d) and 61.93(c)(2).

Reno's argument is without merit. The mere fact that a particular action or omission, as here, is held not to have had an adverse effect on the safety of persons or property, does not undermine the Administrator's authority to hold that the same type of action should be sanctioned because it *could,* if generally permitted, compromise overall aviation safety. Overall safety in air commerce and the public interest require that FAA regulations dealing with record-keeping not be compromised. *See Go Leasing,* 800 F.2d at 1521 (affirming a 10–month suspension due in part to petitioner's failure to have appropriate certification during the operation of 57 flights).

Moreover, the NTSB's affirmation of the Administrator's decision was concordant with NTSB precedent. In *Administrator v. Slotten,* 2 NTSB 2503, *rev. denied,* 582 F.2d 1286 (7th Cir.1978), the NTSB stated:

> Proper endorsement of all prescribed documents is a legitimate regulatory requirement whose purpose is to give notice to all concerned parties, such as FAA inspectors, that the airman is qualified for the operation in which he is engaged.

*Id.* at 2505.[2] Similarly, in *Administrator v. Newman,* 1 NTSB 2008, 2010 (1972), *rev. denied,* 494 F.2d 1219 (2d Cir.1974), where the respondent failed to keep appropriate records regarding altimeter instrument tests and inspections in violation of 14 C.F.R. § 91.170, he argued that record-keeping was not as important as actual maintenance itself.

There the NTSB held that "[a] policy of leniency toward record keeping [violations] inevitably encourages carelessness ... to the derogation of safety in air transportation." *Id.* at 2010.

■ Thus, the NTSB has consistently interpreted the endorsement provisions required by FAA regulations as relating to aviation safety and the public interest. It is well established that statutory interpretation by an agency charged with administering the governing statute is entitled to considerable deference and weight. *See Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 107, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979); *See also United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Good Samaritan Hospital, Corvallis v. Mathews,* 609 F.2d 949, 954 (9th Cir.1979). In this case, we find that the NTSB's interpretation of "safety in air commerce or air transportation and the public interest," as contained in 49 U.S.C. app. § 1429(a), is perfectly reasonable. Thus, we hold that the suspension of Reno's licence was not arbitrary or capricious.

## II. *SPECIFICITY OF FAA REGULATIONS*

■ Reno's final contention is that Section 61.51 of the F.A.R., 14 C.F.R. § 61.51, is vague with regard to what constitutes a pilot logbook. He argues that "reliable record" as contained in section 61.51 can be substituted for the requirement of an endorsement in a pilot "logbook" as required by sections 61.87(d) and 61.93(c)(2) of the F.A.R. Section 61.51 provides:

> "(a) *Pilot logbooks*
>
> The aeronautical training and experience used to meet the requirements for a certificate ... must be shown by a *reliable record.*" (emphasis added)

■ However, Reno's discussion of section 61.51 is not relevant to his F.A.R. violations. The order suspending Reno's commercial pilot certificate was based on his violations of sections 61.87(d) and 61.93(c)(2), not section

---

**2.** The NTSB did not reach the question of whether *Slotten's* failure to endorse his student's certificate merited a sanction, in view of its finding a separate, more serious violation. *Slotten,* 2 NTSB at n. 9.

 

61.51. Section 61.87(d) provides in relevant part:

"(d) *Flight Instructor Endorsements*

A student pilot may not operate an aircraft in solo flight unless his *student pilot certificate* is endorsed; and unless within the preceding 90 days his *pilot logbook* has been endorsed, by an authorized flight instructor...." (emphasis added)

Section 61.93(c)(2) provides in relevant part:

"(c) *Flight Instructor Endorsements*

A student pilot must have the following endorsements from an authorized flight instructor ...; (2) an endorsement in his *pilot logbook* that the instructor has reviewed the pre-flight planning and preparation for each solo cross-country flight." (emphasis added)

In addressing Reno's argument regarding the use of "reliable record" as contained in section 61.51, the ALJ found this language "to mean a reliable record in the *logbook* itself." It is clear from the heading of section 61.51, "Pilot logbooks," that all subsequent discussion in that section is with regard to "Pilot logbooks" and logbook requirements. Reno has taken the phrase "reliable record" out of context and misinterpreted its intended use. Further, as noted above, it is well established that FAA interpretations of FAA regulations are entitled to a high degree of deference. *Janka v. Nat. Transp. Safety Bd.*, 925 F.2d 1147, 1151 (9th Cir. 1991).

■ The language of a regulation is the starting point for its interpretation. The plain language of sections 61.87(d) and 61.93(c)(2) *supra*, requires endorsements on the student pilot certificate and pilot logbook. This court has held that the plain meaning of language in a regulation governs unless that meaning would lead to absurd results. *Dyer v. U.S.*, 832 F.2d 1062, 1066 (9th Cir.1987) (citing *Bechtel Const., Inc. v. United Brotherhood of Carpenters*, 812 F.2d 1220, 1225 (9th Cir.1987). Such is not the case here.

Given the unequivocal language of sections 61.87(d) and 61.93(c)(2) requiring endorsements on student pilot certificates and pilot logbooks, we hold that Reno's failure to com-

ply with these requirements constitutes sanctionable violations.

## CONCLUSION

We have considered Reno's other arguments and find them to be without merit. Accordingly, we deny Reno's petition for judicial review and affirm the NTSB's order suspending Reno's commercial pilot certificate for 10 days.

AFFIRMED.