**UNITED STATES of America, Plaintiff–Appellee,**

v.

**TRIDENT SEAFOODS CORPORATION, Defendant–Appellant,**

and

**Tom Stakkeland; James Hinton, Defendants.**

**No. 94–35178.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1995.

Decided July 12, 1995.

Ralph H. Palumbo, Matthew P. Bergman, Lynn M. Engel, Robert D. Nelson, Heller, Ehrman, White & McAuliffe, Seattle, WA, for defendant-appellant Trident Seafoods Corp.

M. Alice Thurston, Steve Novick, Albert M. Ferlo, Jr., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee U.S.

Before: SKOPIL, FERGUSON, and THOMPSON, Circuit Judges.

Opinion by Judge Skopil; Dissent by Judge Ferguson.

SKOPIL, Senior Circuit Judge:

Trident Seafoods Corporation ("Trident") appeals a civil penalty imposed for violating the Clean Air Act. The issue presented is whether Trident's failure to notify officials of its intent to remove asbestos constitutes a "one-time" violation or a "continuous" violation for purposes of determining a lawful penalty. The district court concluded that Trident's violation was continuous. We conclude that the regulation governing the notice requirement is not sufficiently clear to permit imposing a penalty greater than the statutory maximum for a single violation. We reverse and remand.

## I.

Trident purchased and renovated an abandoned fish cannery in Anacortes, Washington. Asbestos was removed from the cannery site during five days in August and September 1988. A state official learned of the asbestos removal and inspected the site. Trident was cited by the state for failing to give advance notice of the company's intent to remove asbestos, and paid a $250 fine to the state. The Environmental Protection Agency ("EPA") was informed of the violation.

Over three years later, EPA gave notice of its intent to charge Trident with one notice violation and four substantive violations of

the Clean Air Act unless Trident paid a civil fine of $346,000. Trident refused to pay, and the United States commenced this action. The district court entered summary judgment in favor of the government on the charge that Trident violated the Act by failing to provide written notice before removing asbestos. The remaining four substantive charges were submitted to a jury following an eight-day trial. The jury rejected the government's case and found in favor of Trident on all four remaining counts.

The district court imposed a civil fine for the notice violation. The court rejected Trident's argument that failure to give notice is a single violation occurring on a single day, and thus subject to a statutory maximum penalty of "$25,000 per day of violation." Rather, the court held "as a matter of law that failure to comply with the notice requirement is a continuing violation." The court concluded that Trident's violation extended from the date that Trident should have reasonably given notice (10 days before the work began) to the date that the state official learned of the asbestos removal. This 44 day period subjected Trident to potential civil liability of $1,100,000. The district court, however, considered mitigating factors and reduced Trident's fine to $64,750.

## II.

Our starting point is the language of the statute and implementing regulations. *See Gwaltney v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 380–81, 98 L.Ed.2d 306 (1987); *Reno v. National Transp. Safety Bd.,* 45 F.3d 1375, 1379 (9th Cir.1995). A provision of the Clean Air Act, 42 U.S.C. § 7412 (1988), authorizes EPA to identify hazardous pollutants and to develop National Emission Standards for Hazardous Air Pollutants ("NESHAP"). *See United States v. Walsh,* 8 F.3d 659, 661 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994). The asbestos NESHAP applicable to this appeal, 40 C.F.R. Part 61, Subpart M (1988), provided procedures to be followed in removing and disposing of asbestos. Section 61.146(b)(4) required written notice to the EPA "as early as possible" of any plan to renovate a structure

containing asbestos. Violation of NESHAP constitutes a violation of the Act. 42 U.S.C. § 7412(c) & (e) (1988). Violations are punishable by penalties of "not more than $25,-000 per day of violation." 42 U.S.C. § 7413(b) (1988).

Neither the statute nor the regulation expressly addresses whether the failure to comply with the notice requirement is a one-time violation or a continuing violation. This is not a case where "limpid prose puts an end to all dispute." *Gwaltney,* 484 U.S. at 57, 108 S.Ct. at 381. Moreover, no case law directly confronts the issue. The Fourth Circuit has held that violations of discharge limits under the Clean Water Act are daily violations even though reports of such discharges were required on a monthly or quarterly basis. *See Sierra Club v. Simkins Indus., Inc.,* 847 F.2d 1109, 1114 (4th Cir.1988), *cert. denied,* 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989); *see also Chesapeake Bay Foundation v. Gwaltney,* 791 F.2d 304, 314–15 (4th Cir.1986), *vacated on other grounds,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). The court reasoned that the Clean Water Act "speak[s] in terms of penalties per *day* of violation, rather than penalties per *violation."* *Chesapeake Bay,* 791 F.2d at 314 (emphasis in original). "This language strongly suggests that where a violation is defined in terms of a time period longer than a day, the maximum penalty assessable for that violation should be defined in terms of the number of days in that time period." *Id.*

In Trident's case, however, there were no specific time periods defined by the statute or regulation. Trident's only obligation under the clear language of the regulation then in effect was to notify EPA *before* renovation began. This could reasonably be interpreted to mean that the only "day of violation" occurred on the day before Trident commenced renovation.

The district court acknowledged the ambiguity of the regulatory scheme and the lack of case law, and turned to an examination of the policy considerations underlying the Clean Air Act. The court determined that "the self-evident purpose of notification [is] to enable the enforcement agency to monitor asbestos removal and assure effective compli-

ance with work rules." The court reasoned that "[o]nce the renovation is completed, it may be impossible to determine whether or not proper methods were employed." The conclusion that only timely notice assures compliance is unassailable, and thus we have no quarrel with the district court's analysis of the policy considerations supporting advance notification.

█ There is a competing argument, however, that notwithstanding policy concerns, the agency had both the opportunity and the obligation to state clearly in its regulations either that there is a continuous duty to notify or that a failure to notify gives rise to a penalty based on the length of time that the breach exists. We have reasoned that when "violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express." *Phelps Dodge Corp. v. Federal Mine Safety and Health Review Comm'n*, 681 F.2d 1189, 1193 (9th Cir.1982) (internal quotation omitted). Thus, "[t]he responsibility to promulgate clear and unambiguous standards is on the [agency]. The test is not what [the agency] might possibly have intended, but what [was] said. If the language is faulty, the [agency] had the means and obligation to amend." *Marshall v. Anaconda Co.*, 596 F.2d 370, 377 n. 6 (9th Cir.1979) (internal quotation omitted). Thus, reliance on policies underlying a statute cannot be treated as a substitute for the agency's duty to promulgate clear and definitive regulations. *Id.*

█ We are persuaded by this line of reasoning, and we conclude that Trident should not be subject to a "continuous violation" penalty that is not clearly applicable either by statute or by regulation to Trident's conduct. Our conclusion is not inconsistent with the proposition that deference is ordinarily owed to an agency's interpretation of its own regulations. *See Providence Hosp. of Toppenish v. Shalala*, 52 F.3d 213, 216 (9th Cir.1995). No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position. *See Idaho Dep't of Health & Welfare v. United States*

*Dep't of Energy*, 959 F.2d 149, 153 (9th Cir. 1992).

### III.

Trident should be penalized only for a single violation. A remand is required to allow the district court to impose a lawful fine. We reverse and remand to the district court for imposition of a civil penalty not to exceed the statutory maximum amount of $25,000.

**REVERSED** and **REMANDED.**

FERGUSON, Circuit Judge, dissenting:

Because the plain meaning of the statute, 42 U.S.C. § 7413(b), requires that Trident's failure to notify the Environmental Protection Agency ("EPA") be assessed as a continuing violation, I dissent. The judgment of the district court should be affirmed.

### Background

The defendant, Trident Seafoods Corporation, is a seafood processing corporation. In May 1988, it purchased and began renovation of an abandoned fish cannery. The renovation included removal of asbestos insulation by a subcontractor.

The asbestos removal began on August 24, 1988. The subcontractor eventually disposed of *5.24 tons* of bagged asbestos at a landfill, but left at least five bags of asbestos at the facility. At the time that he removed asbestos from Trident's facility, the asbestos removal subcontractor was not certified to remove asbestos. The subcontractor used his 11–year–old son and another person with no experience in asbestos removal to carry out the clean-up at the Trident facility. On September 26, 1988, an asbestos inspector for the Northwest Air Pollution Control Authority learned from the owner of the landfill that Trident had disposed of asbestos, and on that day he went to inspect the facility. On September 30, 1988, Trident gave the government notice of its intent to renovate. The five bags of asbestos were removed by Trident from the facility on October 5, 1988.

When the facility was first inspected by the asbestos inspector on September 26,

1988, he found that the floor boards and the cracks were smeared with white fiber, powder material, and chunks of material. There were areas in the facility that were "like a haze, a broad haze of asbestos fibers." He had "no trouble at all finding large quantities of suspect asbestos material left" behind after the removal attempt by the subcontractor. After a clean-up attempt by Trident, the inspector came back and took additional samples which all tested positive for high concentrations of asbestos. At the recommendation of the government inspectors, Trident hired a new asbestos contractor who finally disposed of approximately twenty-five (25) bags of suspect asbestos on October 14, 1988.

In 1992, the United States sued Trident and its general contractor and subcontractor for violations of the asbestos regulations governing the removal of asbestos from its facility. These violations included four work practice violations and the following claim of notice violation: "Defendants failed to provide written notice, before beginning renovation, of the intention to renovate a facility, in violation of 40 C.F.R. § 61.146 (1990) and sections 112(c) and 114(a)(1)(B) of the [Clean Air] Act, 42 U.S.C. §§ 7412(c) and 7414(a)(1)(B) (1983)." The district court granted summary judgment in favor of the government on the issue of whether Trident committed the notice violation.

Upon consideration of all mitigating factors, the district court assessed a penalty of $64,750 against Trident out of a possible $1,100,000 ($25,000 per day for 44 days). The district court in its penalty determination concluded that the violation of the notice requirement was a continuing violation, given the self-evident purpose of notification to enable the EPA to monitor asbestos removal and assure effective compliance with work rules.

### Discussion

Trident does not contest that it was in violation of the regulation requiring notice and specifying the contents of the notice. Its challenge is to the statute, 42 U.S.C. § 7413(b), that provides for the civil penalty of not more than *$25,000 per day of violation.* Specifically, Trident's challenge raises the issue whether the notice violation is a single-day or continuing violation.

The Clean Air Act, 42 U.S.C. § 7412 (1988), authorizes the Environmental Protection Agency ("EPA") to develop National Emission Standards for Hazardous Air Pollutants.[1] Among the standards which have been adopted are regulations governing the proper removal and disposal of asbestos. 40 C.F.R. Part 61, Subpart M (1988). These regulations include 40 C.F.R. § 61.146(b)(4) (1988), which requires written notice to the EPA of any plan to renovate a structure containing asbestos.[2]

42 U.S.C. § 7412(c) and (e) (1988) provide that a violation of the emission standards adopted by the EPA constitutes a violation of the Clean Air Act.[3] The penalties for violations of both the Clean Air Act and the emission standards are specified in 42 U.S.C. § 7413(b) (1988), which states in relevant part:

> The Administrator shall, in the case of any person which [sic] is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action ... to assess and recover a civil penalty of not more than *$25,000 per day of violation* ...[4]

---

1. Because this case arose in 1988, the 1988 versions of the Clean Air Act and related regulations have been used throughout these proceedings. The most recent version of § 7412 retains the authorization to promulgate regulations.

2. The most recent amendments to these regulations contain the same notice requirement at 40 C.F.R. § 61.145(b) (1994).

3. The most recent amendments to the Clean Air Act contain these provisions at 42 U.S.C.A. § 7412(d)(2) and (f)(4) (West Supp.1995).

4. The most recent amendments to the Clean Air Act retain the civil penalty provision at 42 U.S.C.A. § 7413(b) (West Supp.1995), but modify the language as follows:

> **(b) Civil judicial enforcement**
> The Administrator shall, as appropriate, in the case of any person that is the owner or operator of an affected source, a major emitting facility, or a major stationary source, and may, in the case of any other person, commence a civil action ... to assess and recover a civil penalty of not more than $25,000 per day for each violation ...

The statute also requires the courts to consider specified mitigating factors in assessing a penalty, such as the size of the business, the ability to pay, compliance history, and good faith efforts to comply. Thus, while numerous regulations specify the acts which constitute violations of the Clean Air Act, the statute alone specifies the appropriate punishments for those violations.

The majority agree with Trident's argument that the regulation governing the notice requirement is not sufficiently clear to permit imposing a penalty greater than the statutory maximum for a single violation. They conclude that neither the statute nor the regulations expressly address whether the failure to comply with the notice requirement is a one-time violation or a continuing violation. However, they cite no case that has held that in order for there to be a continuing violation of *any* conduct (relating to notice or otherwise), the statute or regulation must expressly state that it is.

Numerous courts have exclusively used the plain language of the statute in order to determine the appropriate penalty for substantive and procedural violations of the Clean Air Act and the related regulations. *See, e.g., United States v. Midwest Suspension and Brake,* 49 F.3d 1197, 1205 (6th Cir.1995) (the court used the statute to determine the penalty for sixteen violations of an administrative order and four violations of the "no visible emission" standard); *United States v. Louisiana–Pacific Corp.,* 682 F.Supp. 1141, 1163 (D.Colo.1988) (the court used the statute to determine the penalty for violations of regulations promulgated pursuant to the Clean Air Act). No regulations are relevant to determinations of penalties. Similarly, in assessing penalties for violations of the Clean Water Act, courts have routinely relied exclusively on the plain language of the penalty provision of that act—which is worded almost exactly like the penalty provision of the Clean Air Act—to determine whether violations are continuing. *See, e.g., Atlantic States Legal Foundation v. Tyson Foods,* 897 F.2d 1128, 1139–40 (11th Cir. 1990) (treating noncompliance with a monthly average limitation as a continuing and daily violation); *Chesapeake Bay Foundation v. Gwaltney,* 791 F.2d 304, 313–16 (4th Cir.

1986) ("It makes little ... sense to treat a monthly violation as one day of violation.... This approach, in essence, sets a maximum penalty *per* violation, a result which we see as inconsistent with the language of the statute.") (emphasis in original), *vacated on other grounds,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987).

In the plainest terms possible, Trident has succeeded in convincing the majority that the words "per day of violation" be eliminated from the statute so that it effectively reads "not more than $25,000." That interpretation is not permitted. Each word of a statute must be given meaning. *Boise Cascade Corp. v. United States Environmental Protection Agency,* 942 F.2d 1427, 1432 (9th Cir.1991) ("we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."). It makes no sense to contend that a notice violation occurs and then ceases in a single day. If notice is not given one day, nor on succeeding days, the violation is not cured. It continues for each day that notice is required and not given. It is illogical to claim that a requirement of notice occurs and somehow ceases on a single day. The fact that notice can be given on a single day does not mean that those days on which notice is not given are not days on which the violation continues.

The act of not providing notice is an act of omission. Trident believes that when it comes to a determination of continuity, there is a difference between an act of omission and an act of commission. However, one who performs an act of commission is liable for every day that the act occurs. If the act is one of omission, then the violation continues for each day that the act of omission occurs—that is, until compliance.

There is little need to explain the importance of the notice requirement when it comes to asbestos. Exposure to asbestos can cause a debilitating lung disease called asbestosis, a cancer of the chest and abdominal lining called mesothelioma, and cancers of the lung, esophagus, stomach, and colon. 39

Fed.Reg. 8820. It is unquestioned that a major source of airborne asbestos is renovation activities during which insulation containing asbestos is stripped or removed from structures and pipes. It is also unquestioned that the necessity for proper and safe removal is overwhelming when the facility is to be used for the processing of a food product. It is therefore clear that the district court was correct in its determination that failure to provide the proper notice was a continuing violation, given the purpose of the notice requirement to allow supervision of the renovation process by the responsible agency. To conclude otherwise would remove any incentive to comply, since a renovator could conduct an asbestos removal without providing any notice and, if discovered, would only have to pay a maximum penalty of $25,000 for a one-day violation. The renovator could thus enhance his chances of escaping liability for conducting an improper removal, because once the renovation was complete, evidence of improper work practices may be impossible to reconstruct.

The plain language of the statute "not more than $25,000 per day of violation" disposes of Trident's claim that only one day of violation can be assessed against it. The district court was correct in its determination that the notice violation resulted in continuing harm which had to be penalized as a continuing violation. The argument of Trident that there was only one day of violation is based on the incorrect assumption that in this case there was only one day of harm—the first day Trident was required to give notice. However, it is clear that each day that Trident failed to notify the EPA resulted in a separate harm from the dangers of asbestos exposure because on each of the days that notice was not given, Trident failed to properly dispose of the asbestos in the facility. The facts in this case clearly spell out the substantive damages when asbestos is improperly removed by untrained workers.

Trident does not dispute that it violated the Clean Air Act by violating the notification requirement. Trident only disputes the punishment it received for that violation. The plain language of the Clean Air Act, 42 U.S.C. § 7413(b) (1988), is dispositive as to

the appropriate penalty for Trident's violations, and therefore I dissent.